IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RHONDA BURKE                                Case No. 3:13-cv-01890-MA

                    Plaintiff,                   OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY

                    Defendant.

RORY LINERUD
Linerud Law Firm
PO Box 1105
Salem, OR 97308

        Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

THOMAS M. ELSBERRY
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

        Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Rhonda Burke seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the final decision of the Commissioner.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on February 25, 2010, alleging disability beginning August 15, 2008, due to back and knee pain, post-traumatic stress disorder (PTSD), and bipolar disorder. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on January 20, 2012, at which plaintiff appeared with her attorney and testified. A vocational expert, Patricia B. Ayerza also appeared at the January 20, 2012 hearing and testified. On March 30, 2012, the ALJ issued an unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1966, plaintiff was 45 years old on the date of the ALJ's adverse decision. Plaintiff completed school through the ninth grade and received a general education degree (GED) at age eighteen. Plaintiff completed two years of community college and has past relevant work as a retail cashier, flagger, and gas station cashier.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: status post left knee anterior cruciate ligament (ACL) reconstruction; cervical and lumbar spine degenerative disc disease, status post lumbar diskectomy and artificial disk implant; obesity; substance abuse; depressive disorder; and anxiety

disorder. At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with the following residual functional capacity (RFC) light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following exceptions:

> Specifically, this individual can lift up to twenty pounds occasionally and lift and/or carry up to ten pounds frequently; stand, walk and/or sit for about six hours in an eight hour day; push/pull is unlimited except for the lift/carry restriction; she can frequently balance; occasionally climb ramps and stairs, stoop, kneel, or crouch; the claimant must avoid ladders, ropes, scaffolds, and crawling; and must avoid concentrated exposure to vibrations and hazards. This individual could perform simple, routine tasks and follow short simple instructions. This individual could do work that needs little or no judgment and could perform simple duties that can be learned on the job in a short period. This individual would have average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence and pace) in an ordinary work setting on a regular and continuing basis (i.e., eight hours a day for five days a week, or an equivalent work schedule) within customary tolerances of employers rules regarding sick leave and absence. This individual could have occasional interactions with co-workers and supervisors and can work in proximity to co-workers but not in a cooperative or team effort. This individual could deal with occasional work setting changes. This individual would not deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process. Incidental contact with the general public is not precluded.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and

residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as small product assembler, electronics worker, and small products cleaner. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from August 15, 2008, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to find plaintiff's headaches were a severe impairment at Step Two; and (2) the ALJ failed to properly consider functional limitations resulting from plaintiff's obesity in the RFC finding.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be

upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I.  The ALJ Did Not Err at Step Two

Plaintiff argues that the ALJ erred by failing to include her headaches as a severe impairment at Step Two. "At step two of the five-step inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1289–1290 (9th Cir. 1996). An impairment is "not severe" if it does not significantly limit plaintiff's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); *see also Webb v. Barnhart,* 433 F.3d 683, 686 (9th Cir. 2005). A plaintiff only can establish a medically determinable impairment at Step Two, "if the record includes signs—the results of 'medically acceptable clinical diagnostic techniques,' such as tests—as well as symptoms, i.e., [the claimant's] representations regarding his impairment." *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).

6 - OPINION AND ORDER

Ultimately, however, Step Two "is a *de minimis* screening device used to dispose of groundless claims," and an impairment or combination of impairments will only be found "not severe" if "the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting *Yuckert*, 841 F.2d at 306).

At Step Two, the ALJ discussed medical evidence of plaintiff's headaches and found them non-severe. Specifically, the ALJ noted that plaintiff reported that her back pain was causing her headaches. Tr. 20. The ALJ further noted that although plaintiff reported having one or two headaches a month in November 2009, a treatment note in September 2010 indicated that the headaches ceased after a steroid injection. *Id.* The ALJ found that "there is no objective medical evidence that [plaintiff's headaches] significantly limit [plaintiff's] ability to perform basic work activities." Tr. 20.

Moreover, clinical and laboratory findings do not support the plaintiff's allegation of severe limitations from migraines. For example, plaintiff's head CT in August 2007 was negative. Plaintiff's examinations noted an absence of guarding and light sensitivity findings. Tr. 463, 465-66. Contrary to plaintiff's assertion, a careful review of the medical record reveals no actual diagnosis of migraines. Plaintiff's prison treatment records indicate subjective complaints of migraine headaches but no

7 - OPINION AND ORDER

diagnosis of migraines from an acceptable medical source. Tr. 450, 453, 454, 461, 463, 465-470; 20 C.F.R. §§ 404.1513(a)(b); 416.913(a)(b); *Ukolov*, 420 F.3d at 1005. Thus, the ALJ's finding of plaintiff's headaches as non-severe at Step Two is wholly supported by substantial evidence in the record.

Even assuming *arguendo* that the ALJ erred at Step Two, the error is harmless. Tr. 19. An error in failing to list a condition at Step Two is harmless if the ALJ considers the limitations posed by the allegedly omitted condition in formulating the RFC. *Lewis v. Astrue,* 498 F.3d 909, 911 (9th Cir. 2007). Thus, the Court may only find harmful error if plaintiff's alleged functional limitations caused by her headaches were not accounted for in the RFC. *Lewis*, 498 F.3d at 911.

Here, plaintiff argues that the ALJ failed to consider specific limitations that her headaches require her to lay down in dark room for two to three days at a time, and that she experiences approximately ten headaches per month. Pl. Br. (#11) p. 7; Tr. 61-62. I disagree for several reasons.

First, it is notable that plaintiff does not challenge the ALJ's negative credibility determination. The ALJ discredited plaintiff's testimony for two primary reasons. Tr. 25. First, the ALJ documented numerous inconsistencies in plaintiff's reporting of her substance abuse. Tr. 244, 331, 370, 375, 394, 420. Second, the ALJ noted that plaintiff was not truthful with her medical

providers. For example, the ALJ discussed that plaintiff's medical history would change from appointment to appointment and even during an appointment. Tr. 398, 402, 406. The ALJ also noted that another provider reported that plaintiff had violated her pain contract and was engaging in drug-seeking behavior with other providers. Tr. 414-15. Although plaintiff does not contest the adverse credibility determination, I have carefully reviewed the record in its entirety, and conclude that the ALJ's finding is readily supported by substantial evidence in the record.

Second, the ALJ appropriately considered plaintiff's headaches and any resulting limitations in the RFC finding. In this case, as noted above, the only evidence of the impact of plaintiff's headaches on her functional abilities is plaintiff's own testimony, which the ALJ appropriately discredited. In the decision, the ALJ discussed plaintiff's headache severity and her need to lay down for two to three days in a dark room and found her allegations not credible. Tr. 24-25. Indeed, the medical record further supports the ALJ's finding and documents several inconsistencies in plaintiff's report of the severity and frequency of her headaches. For example, at the hearing in January 2012, plaintiff testified to experiencing ten headaches a month. Tr. 62. However, in November 2009, plaintiff reported to a treatment provider that she experiences one to two headaches a month. Tr. 325. Additionally, plaintiff testified at the hearing to occasionally going to the

emergency room to obtain relief from her migraines, but the medical record is devoid of any emergency room treatment records for migraines. Tr. 62.

Third, the ALJ appropriately considered plaintiff's back and neck pain, which plaintiff alleges causes her headaches. On several occasions, plaintiff has reported to treatment providers that her back or neck pain is causing her headaches. Tr. 331, 334, 469. In November 2009, treating nurse practitioner, Pat Truhn assessed plaintiff's headaches as a "cervical strain, with resulting headaches." Tr. 325. In the decision, the ALJ discussed at length the medical evidence relating to plaintiff's back and neck and her alleged symptoms of back and neck pain. Tr. 25-26. To be sure, plaintiff does not now challenge the ALJ's RFC assessment of her back and neck pain.

Finally, plaintiff appears to argue that the ALJ failed to develop the record with respect to her migraines. "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen*, 80 F.3d at 1288)). After a careful review of the record, I conclude that there

are no ambiguities or inadequacies that would trigger the ALJ's duty to develop the record.[1]

In summary, I conclude that the ALJ's Step Two finding that plaintiff's headaches are non-severe is supported by substantial evidence. Additionally, while plaintiff alleges severe pain due to headaches, plaintiff has cited no objective evidence in the record establishing that her headaches impair her ability to function beyond the limitations included in the ALJ's modified light duty RFC finding. Tr. 23. Because plaintiff has not shown her headaches cause additional functional limitations not accounted for in the RFC, any alleged step two error was harmless. *Lewis*, 498 F.3d at 911.

## II. The ALJ Did Not Err in Assessing Her Obesity in the RFC

An ALJ's RFC need only incorporate credible limitations supported by substantial evidence in the record and must be consistent with the restrictions identified in the medical testimony. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *see Bayliss* v. Barnhart, 427 F.3d 1211, 1217 (9th Cir.

---

[1] In her opening brief, plaintiff contends that the Appeals Council erred by failing to include new evidence about her alleged headaches in the record and indicated the information would be submitted with her Reply Brief. Pl. Br. (#11), pp. 8-9. In denying plaintiff's request for review, the Appeals Council did not to make these medical treatment notes part of the overall record because the treatment notes concerned a later time. Tr. 1-4. Plaintiff did not submit these treatment notes to this court, file a reply, or make any substantive argument concerning the materiality of the treatment notes. Thus, I decline to address plaintiff's argument concerning the alleged new evidence.

2005)(the ALJ is only required to identify specific, credible limitations in the RFC; "[p]reparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary").

Plaintiff argues that the ALJ failed to consider the impacts of her obesity in the RFC finding. Plaintiff further contends that the ALJ failed to specify the restrictions attributed to obesity as required by Social Security Ruling (SSR) 02-1p. Plaintiff's argument misses the mark.

SSR 02-1p specifically states that "[an ALJ] may not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity of functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record." SSR 02-1p, *available at* 2012 WL 34686281, *6 (Sept. 12, 2002).

With respect to plaintiff's obesity, the ALJ appropriately considered any possible limitations resulting from this impairment in the RFC finding. In this case, the ALJ specifically found that "plaintiff does not report any difficulty in functioning due to her obesity, nor do her providers report limitations in functioning related to her obesity." Tr. 26. Substantial evidence readily supports the ALJ's finding.

In the decision, the ALJ gave significant weight to the medical opinion of nonexamining physician, Neal E. Berner. M.D. In a November 9, 2010 physical RFC assessment, Dr. Berner opined that plaintiff could perform light work except is limited to occasional stooping; crouching; crawling; and climbing ladders, ropes, and scaffolds. Tr. 108-09. Dr. Berner indicated that the limitations in the RFC are based on plaintiff's severe impairments of degenerative disc disease of the lumbar and cervical spine and obesity. *Id.* Indeed, the overall medical record is consistent with Dr. Berner's RFC assessment. For example, treatment notes indicate relatively normal knee examinations after her left knee surgery in August 2008. Tr. 309, 325, 329. Medical providers also documented relatively normal back and neck examinations both before and after lumbar back surgery in March 2010. Tr. 325, 336, 352, 354, 356. Tellingly, plaintiff does not challenge the ALJ's crediting of Dr. Berner's RFC assessment.

To be sure, plaintiff has not identified any information from any treatment provider describing how her obesity limits her functioning. Indeed, the medical record is silent as to how plaintiff's functional limitations are exacerbated by her obesity. A careful review of the medical record shows that the only evidence in the record concerning plaintiff's obesity are notes that plaintiff has a body-mass-index (BMI) between 30-32 and a diagnosis

of obesity.[2] *See generally*, Tr. 318, 320, 325, 329, 330, 331, 334. Although plaintiff alleges back and knee pain are disabling, plaintiff did not testify to any pain or limitations resulting from her obesity. Tr. 53, 56-57. *See Burch,* 400 F.3d at 683 (plaintiff has burden to provide evidence establishing how her obesity limits her functioning).

In sum, I conclude the ALJ did not err in considering plaintiff's obesity, and the ALJ's RFC finding is supported by substantial evidence in the record as a whole. *Burch,* 400 F.3d at 684. I have not identified any error committed by the ALJ, and therefore, the hypothetical posed to the VE contained all the limitations deemed credible by the ALJ and supported by substantial evidence in the record. Accordingly, the ALJ could rely upon the VE testimony. *Valentine*, 574 F.3d at 694.

---

[2] SSR 02-1p notes that the National Institutes of Health Clinical Guidelines recognize "three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed 'extreme' obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. SSR 02-1p, *available at* 2012 WL 34686281, *2 (Sept. 12, 2002).

## CONCLUSION

For the reasons stated above, the Commissioner's final decision is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this **23** day of FEBRUARY, 2015.

Malcolm F. Marsh
United States District Judge

15 – OPINION AND ORDER